## Amalgamated Roofing Company, Appellant, v. The Travelers Insurance Company, Appellee.

### Gen. No. 25,562.

1. WORKMEN'S COMPENSATION ACT—*when employee of another considered employee of general employer.* Where a roofing contractor was engaged by plaintiff to construct a roof on a building being erected by it and to repair the roofs on some of its other manufacturing buildings, a workman employed by such contractor and not on the pay roll of plaintiff, though not at common law an employee of plaintiff, would be so considered under the Workmen's Compensation Law, as between the plaintiff and the representative of such employee.

2. INDEMNITY—*construction of policy as to employees covered.* In determining, as between the insurer and insured under an employer's liability policy, whether an injured person is an employee of insured, the words of the policy must be given a conventional, appropriate and reasonable meaning.

3. INDEMNITY—*construction of policy as to employees covered.* A provision of a workmen's liability insurance policy covering insured "as respects personal injuries sustained by his employees, including death at any time resulting therefrom" is limited, so far as those words are concerned, to those who would at common law be considered as employees of insured.

4. INDEMNITY—*construction of policy as to employees covered.* Certain provisions of an employer's indemnity policy referring to "employees," "such injuries" and to "compensation for any personal injury or death covered by this policy," *held* to relate back to the original obligation of the policy which was "as respects personal in-

juries sustained by his employees including death at any time re-
sulting therefrom," and covered only those considered employees
at common law.

5. INDEMNITY—*construction of policy as to employees covered.*
A provision of an employer's liability insurance policy defining the
class of persons to whom the policy shall apply as those "legally
employed by" the insured, but whose remuneration shall be used as
a basis for the determination of the premium of the policy, is en-
tirely consistent with the original use in the policy of the word
"employees" which covered only persons who would be considered
employees under the common law.

6. INDEMNITY—*construction of policy as to employees covered.*
In a paragraph of a workmen's compensation insurance policy
which provides that certain provisions of the Workmen's Compen-
sation Law are made a part of the policy as fully as if wholly writ-
ten therein and that the relation between the insurance company
and the insured employee shall be declared by such provisions, sub-
ject to the terms, provisions, limitations and requirements of the
policy not inconsistent therewith, the two phrases "injured em-
ployee" and "such injured employee" cannot be said definitely to
refer to employees as defined and determined by the Workmen's
Compensation Law but are used in the sense in which the word
"employee" is used in that part of the policy containing the definite
promise and expressed obligation of the company, which is the
meaning given to the word at common law.

7. INDEMNITY—*construction of policy as to employees covered.*
Where the word "employee" is used in the obligatory part of an
employer's liability insurance policy in the sense in which it is
used at common law, an attached rider, which provides that the ob-
ligations of the policy include such Workmen's Compensation Laws
as are therein cited and mentions the Acts of 1913 and 1915 and
laws amendatory thereof, means merely that, as to such employees
of insured as would be considered such at common law, the policy
is enforceable in accordance with those provisions of the Work-
men's Compensation Law which may properly be applicable thereto.

8. INDEMNITY—*construction of policy as to employees covered.*
A provision of an employer's liability insurance policy that "the fore-
going enumeration and description of employees includes all persons
legally employed in the service of this employer in connection with
the business operations above described to whom remuneration of
any nature in consideration of service is paid" does not indicate
an intention to include any persons save those who would be con-
sidered employees at common law.

9. INDEMNITY—*employees within policy.* Though it could not be
said that it was a condition precedent to liability under an em-
ployer's liability insurance policy that the name of the person for

whose death indemnity was claimed should be upon the pay roll of insured, or that the premium had been paid upon his wages, yet those facts were at least some evidence, along with the fact that he was neither hired nor controlled by insured, that it was not intended to include him as an employee covered by the policy.

10. INDEMNITY—*employee of* `contractor as within general employer's policy.* One employed by and responsible to a contractor engaged by a manufacturer to construct and repair the roofs of the manufacturing buildings was not a common-law employee of the manufacturer, and though, under the Workmen's Compensation Law, damages for his death were recoverable from the manufacturer, such damages are not a liability of the insurer whose policy covered only employees who would be considered such at common law.

11. APPEAL AND ERROR—*when insufficiency of affidavit of merits cannot be questioned.* A plaintiff who went to trial on the record as it stood after the overruling of plaintiff's motion to strike defendant's amended affidavit of merits cannot, on appeal, raise a question as to the sufficiency of the affidavit.

Appeal from the Municipal Court of Chicago; the Hon. WELLS M. COOK, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1919. Affirmed. Opinion filed June 18, 1921. Rehearing denied July 1, 1921.

WEST & ECKHART, for appellant.

FRANK M. COX and ALBERT N. POWELL, for appellee; ROBERT J. FOLONIE, of counsel.

MR. PRESIDING JUSTICE TAYLOR delivered the opinion of the court.

On February 7, 1919, the plaintiff, Amalgamated Roofing Company, brought suit in the municipal court against the defendant, The Travelers Insurance Company, for the sum of $4,000 on an employer's liability policy. The cause was tried without a jury and judgment entered that the plaintiff take nothing by its suit and that the defendant recover its costs. This appeal is therefrom.

The plaintiff, Amalgamated Roofing Company, is a corporation formed for the purpose of manufacturing, buying and selling, at wholesale and retail, roof-

ing materials, "and to construct and erect all kinds of buildings and parts thereof." In June, 1918, it had a plant at Clearing, Illinois, for manufacturing prepared roofing, asphalt shingles, roof paints and roof cement. The main plant consisted of three parts: a building in the center 180 by 60 feet; a building on the east 180 by 50 feet; and a building on the west 180 by 50 feet. There was also a loading platform 180 by 12 feet; one room 40 by 25 feet for the manufacture of cement; and a boiler room and a still room 45 by 170 feet. Shortly prior to or about the 1st of June, 1918, the plaintiff undertook to erect a building, a new warehouse, 83 feet wide and about 175 feet long, at the north end of its original structure, using the north wall of the original structure as a part of the new addition or warehouse. The new building was to be a one-story building and be connected by means of fire doors with the old building. About the middle of May, 1918, one S. K. Milligan, president of the plaintiff company, entered into negotiations with one Colvin, a roofing contractor, who was an old customer of the plaintiff, telling him that the plaintiff company was about to erect a new building and that it would like him to do the work of constructing the roof on the new building; that the plaintiff would supply the material. Milligan also told Colvin that the plaintiff had some roofs, on the old buildings, to repair and also some other work, and that the plaintiff would like all the work done at the same time. The price for the work was talked over, and Colvin told him that it would cost approximately $1.50 a square to lay the roof on the new building, the plaintiff to furnish the roofing material. The old work was to be done afterwards, and no price as to that was decided upon. As a result of the negotiations Colvin shortly afterwards began the work.

It is the testimony of Milligan, that prior to the 1st of June, 1918, he told Colvin that one MacLean, the

superintendent of the plaintiff, would tell him, Colvin, what materials to use on the new building and also on the old buildings which were to be repaired; that Colvin was to look to MacLean for instructions as to the work on the old buildings.

It is the testimony of Colvin that about the 2nd of May, 1918, he had a conversation with Milligan and was informed that he, Colvin, was to consult with Superintendent MacLean as to the details of the work. The evidence shows that MacLean and Colvin consulted together as to the selection of all the material, and where it was to go, and that MacLean, to quite an extent and on a number of occasions, moved Colvin's men about from shop to shop.

When MacLean was asked, who was the foreman on the job under Colvin, he said that they had a dispute about it and that Colvin's foreman quit; that from time to time prior to June 1, 1918, men working for Colvin came to him, MacLean, and asked him concerning what work they should do and how they should do it; that that occurred frequently and that he gave them instructions.

On June 1, 1918, one Walter M. Frame, who was hired by Colvin, while working upon the new building, received an injury which resulted in his death. The deceased left Rhoda Frame, his widow, and two children, Raymond Frame, 10 years of age and Walter Glenn Frame, 5 years of age.

On June 1, 1918, the name of Frame was not on the pay roll of the plaintiff; he was not employed by it nor at that time did Colvin have any insurance against liability under the Workmen's Compensation Act.

More than 2 years before, on February 19, 1916, the plaintiff, Amalgamated Roofing Company, took out an employer's liability policy in the defendant company. The general business operations upon the plaintiff's premises were therein described as "Manufacturing roofing paper."

218    APPELLATE COURTS OF ILLINOIS.

Amalgamated Roofing Co. v. The Travelers Ins. Co., 221 Ill. App. 213.

It was admitted at the trial that the plaintiff, Amalgamated Roofing Company, had elected to be bound by the Workmen's Compensation Act prior to the time of the accident and had not retracted the election and that it had elected to and was bound by the Workmen's Compensation Act since the date of the policy sued upon.

On February 28, 1916, the defendant, in a writing, notified the Industrial Board at Springfield, Illinois, of the issuance of the policy in question. In that notification the following language occurs: "Employees excluded from coverage of policy as follows: None." It was admitted that the policy sued upon was in force at the time of the institution of this action.

On July 11, 1918, Rhoda Frame, administratrix of the estate of Walter M. Frame, deceased, filed an application for an adjustment of claim with the industrial Board of Illinois. In that application it was stated that the employer was the Amalgamated Roofing Company, J. N. Colvin and J. N. Colvin Roofing Company. Subsequently, after a finding and decision by the arbitrator, the Industrial Commission on December 2, 1918, ordered that the award of the arbitrator should stand as and for the decision of the commission. The arbitrator found that the parties were operating under the provisions of the Workmen's Compensation Act and that on June 1, 1918, Walter Frame sustained accidental injuries which arose out of and in the course of his employment; that the petitioner, Rhoda Frame, administratrix, was entitled to $10 a week for 400 weeks.

The proceedings before the arbitrator and the Industrial Commission, as far as the respondents in that case were concerned and until the final decision by the Industrial Commission, were taken charge of by representatives of the defendant and Milligan. Immediately thereafter, some time in December, 1918, the attorney for the defendant undertook to turn over

the matter as it then stood to the attorney for the plaintiff, claiming that the defendant was not liable. Some correspondence then took place between counsel for the plaintiff and for the defendant, which shows that they then, at least, disagreed as to the liability of the defendant.

The plaintiff having taken out the Employers' Liability Policy in the defendant company, and brought this suit, the question now arises whether the defendant, by reason of that policy of insurance, is liable for the amounts which the plaintiff has been ordered under the Workmen's Compensation Law to pay Frame's representatives.

The plaintiff made a contract with Colvin to have certain roofing work done. Colvin employed, as a workman, one Frame. The latter was killed while at that work for Colvin. Section 31 of the Workmen's Compensation Law [Callaghan's 1916 Stat. ¶ 5475(31)] provides that if the plaintiff failed to require Colvin to insure his liability to pay the compensation, provided in the act, to any of his employees who might be injured, it, the plaintiff, should be liable. The plaintiff failed to require Colvin to insure his liability to his employees. And, accordingly, subsequently, the result of appropriate proceedings, the Industrial Board decided that the plaintiff was liable to the representatives of deceased for $10 a week for 400 weeks.

It will be seen, therefore, that this suit is not one under the Workmen's Compensation Law, but is a suit upon a contract of insurance, by which suit the plaintiff claims that it should be reimbursed for the money which it has been ordered to pay out of the discharge of its statutory liability to the representatives of Frame.

The policy states in the beginning that it is an agreement by the defendant, in regard to personal injuries sustained by the plaintiff's "employees." In order to decide the question as to the liability of the

defendant under the policy, it is necessary to determine what is meant, in the policy, by the word "employees"; in other words, whether Frame, who was hired by Colvin and not by the plaintiff, and who was not on the pay roll of the plaintiff, comes within the purview of the policy as an employee.

Considering the employment of Frame by Colvin and that he was not on the pay roll of the plaintiff, he would not he considered at common law as an employee of the plaintiff; and the defendant, under its policy in the instant case, would not be liable to the plaintiff for the damages assessed against it for the death of Frame. But, it is the contention of counsel for the plaintiff that the meaning of the term "employee" must be determined by the Workmen's Compensation Statute and not by the rules of the common law. There is no doubt but that Frame, by reason of the application of the principles of the Workmen's Compensation Law and for the purpose of recovery of damages from the plaintiff by the representatives of Frame, was to be considered as between the plaintiff on the one hand and the representatives of Frame on the other hand as an "employee." But, in determining the relations between the plaintiff and the defendant as they came into being as the result of the policy of insurance, whether or not Frame was an employee of the plaintiff must be determined by giving the words of the policy a conventional, appropriate and reasonable meaning. Having in view the general purpose of the document, there is nothing anywhere in the policy which justifies, in our opinion, the conclusion that the word "employee," as used therein, necessarily meant one who, if injured or killed, would be entitled to compensation by reason of the Workmen's Compensation Act. A careful analysis of the policy suggests that the parties studiously avoided using the word "employee" in such a way as to mean all who might be considered such through the Workmen's Compensation Act.

The policy provides at the outset in a phrase which qualifies the whole obligation of insurance, that the defendant "does hereby agree with the employer (meaning the plaintiff) as respects personal injuries sustained by his employees including death at any time resulting therefrom," etc. Those words limit the promise which follows to personal injuries sustained by the plaintiff's "employees." And the word "employees," as there used, without considering anything further in the policy, would not include Frame, who had been employed by Colvin and not by the plaintiff.

In the next paragraph, entitled Indemnity I. (a), the nature and scope of the obligation assumed by the defendant is set forth. It is a promise of the defendant—as respects personal injuries sustained by the plaintiff's employees, including death at any time resulting therefrom—"To pay to the person and in the manner provided by the Workmen's Compensation Law, any sum due or to become due from this employer because of any *such* injury and the obligation for compensation therefor imposed upon or accepted by this employer under certain Statutes cited and described in an endorsement attached to this policy, each of which Statutes is herein referred to as the Workmen's Compensation Law."

Inasmuch as the words "such injury" and "therefor" relate back to the qualifying words "as respects personal injuries sustained by his employees including death at any time resulting therefrom," it is quite obvious that the promise to pay, as far as those words are concerned, is limited to injuries to or the death of those who would be considered, at common law, under the circumstances, "employees" of the plaintiff, and would not include Frame.

The rest of paragraph I (a) providing that all the provisions of the Workmen's Compensation Law "covered hereby shall be and remain a part of this contract, as fully and completely as though written

herein, so far as they apply to compensation for any personal injury or death'' covered by the policy, does not in any way extend the promise to pay because of the use of the words ''so far as they apply to compensation for any personal injury or death covered by this policy.'' The latter words limiting the application of the provisions of the Workmen's Compensation Law to conpensation for ''death covered by this policy'' must be taken to refer back to the original obligation of the insurer with the restriction, which is ''as respects personal injuries sustained by his employees including death at any time resulting therefrom,'' etc.

In the subparagraph (b) the words ''To Indemnify this employer against loss by reason of the liability imposed upon him by law for damages on account of such injuries,'' simply mean ''as respects personal injuries sustained by his employees including death at any time resulting therefrom,'' etc. The words ''such injuries,'' owing to their context and what precedes them, must be considered as meaning ''injuries sustained by his employees'' and as in no way affecting the common-law use of the word ''employees,'' in the beginning of the policy.

Paragraph II merely pertains to service to be rendered the employer in the inspection of work places covered by the policy, and to make suggestions as to methods of operation and, upon notice, to investigate injuries and settle them in accordance with the law.

Paragraph III binds the defendant ''To defend in the name and on behalf of this employer any suits, or other proceedings which may at any time be instituted against him on account of such injuries.'' The words ''such injuries,'' as subparagraph (b), must be considered as referring back to the original area of liability which is described and delimited by the words ''as respects personal injuries sustained by his employees,'' etc.

Paragraph IV binds the defendant to pay certain court costs and certain interest as expenses when incurred in any legal proceeding which may be defended by the defendant.

Paragraph V provides that: "This agreement shall apply to such injuries sustained by any person or persons legally employed by this employer whose entire remuneration shall be included in the total actual remuneration, for which provision is hereinafter made, from which remuneration the premium of this policy is to be computed and adjusted," etc. That paragraph, although it uses the phrase "such injuries," defines the person or persons somewhat differently; it does not use the word "employees" but instead "persons legally employed by this employer whose entire remuneration" shall be used as a basis for the premium of the policy. The first four paragraphs in the policy undertake to set forth four series of obligations on the part of the defendant "as respects personal injuries sustained by his (plaintiff's) employees." On the other hand, paragraph V undertakes to define the class of persons to whom the policy of insurance shall apply; and that class of persons is described as those who are "legally employed by" the plaintiff, but whose remuneration shall be used as a basis for the determination of the premium of the policy. It may be said that paragraph V qualifies somewhat the description of those whose injuries or death the policy was intended to cover. It, however, is entirely consistent with the original use of the word "employees." Of course it does, in a sense, add a qualification to the use of the word "employees" by providing that there shall be no liability on the defendant unless their entire remuneration, that is their wages, shall be considered as a part of the basis used in the computation of the premium of the policy.

Paragraphs VI and VII have no bearing upon the question under consideration.

Following paragraphs I to VI, there are eleven paragraphs A to K, which fall under the title, ''This agreement is subject to the following conditions.''

Paragraph A provides that the premium during any policy period is to be based upon the entire remuneration and ''by all employees of this employer engaged in the business operations described in said declarations.''

Paragraph B provides the way in which the policy may be canceled.

Paragraph C provides that the defendant may inspect the plant, etc., covered by the policy and the plaintiff's books ''so far as they relate to the remuneration earned by his employees while the policy was in force.'' Of course, that use of the word ''employees'' obviously means hired and paid for by the plaintiff and not such a workman as Frame.

Paragraph D provides that that part of the Workmen's Compensation Law which allows ''an injured employee or his representative if death results'' to enforce a claim to compensation directly against the defendant—which provides that notice to the plaintiff should be notice to the defendant; which provides that jurisdiction of the plaintiff in any legal proceeding should be jurisdiction of the defendant; which provides that any such claim shall be an equitable lien upon any money due to the plaintiff on account of the policy; which provides that the defendant shall not be relieved from payment because of the insolvency, bankruptcy or default of the plaintiff; which provides that compensation shall be paid direct to the claimant by the defendant, is made a part of the policy, in the language of the policy, and as fully and completely as if wholly written therein.

That paragraph further provides that ''the relation between the company (the defendant) and such injured employee or those claiming by, through or under him, shall be as declared by such provisions but subject to

the terms, provisions, limitations and requirements of the policy not inconsistent therewith.'' In that paragraph the two phrases ''injured employee'' and ''such injured employee'' cannot be said definitely to refer to employees as defined and determined by the Workmen's Compensation Law, because the latter part of paragraph D states that the relationship between the defendant and the employee shall, as declared by the provisions of paragraph D, ''be subject to the terms, provisions, limitations and requirements of the policy not inconsistent therewith.'' Quite obviously, it would be inconsistent to consider the use of the word ''employee'' in paragraph D as meaning the same as ''employee.'' under the Workmen's Compensation Act when, as has been shown, the definite promise of the company and the expressed obligation of the company, as set forth in the written agreement, including paragraphs I to VII, the word ''employee'' meant, and only meant, one employed as at common law.

Paragraphs E, F, G, H, I, J and K are of no importance in determining the question involved, save that in paragraphs H and I the word ''employee'' is used and in such a way as to seem to refer to employees such as are described in the earlier part of the policy. In both H and I the phrase ''employee or his dependents'' is followed by the words ''governed hereby.'' Evidently, only those employees which the body of the policy described and which were only such as would be considered employees at the common law were meant.

On the second page of the policy, following the signature to the policy, there is an indorsement or rider dated August 12, 1915, which recites, in part, the following: ''The obligations of Section 1 (a) of the policy to which this endorsement is attached include such Workmen's Compensation laws as are herein cited and described and none other.'' Then

there are mentioned the Acts of 1913 and 1915 and any laws amendatory thereof.

As to the effect of the rider of August 12, 1915, it would seem that the words ''The obligations of Section 1 (a) of the policy to which this endorsement is attached include such Workmen's Compensation laws as are herein cited and described and none other,'' etc., mean merely that the obligation, to pay ''any sum due or to become due from'' the plaintiff ''because of any such injury,'' that is ''as respects personal injuries sustained by his employees including death,'' is subject to enforcement pursuant to the Workmen's Compensation Act; in other words, the particular obligation set forth in Section 1 (a) is not decreased or enlarged—it still remains limited to the so-called common-law employees—but as such obligation it is enforceable only against those who are, normally considered, employees of the plaintiff, and as to them it is enforceable in accordance with those provisions of the Workmen's Compensation Law which may be properly applicable thereto.

In *Illinois Indemnity Exchange v. Industrial Commission,* 289 Ill. 233, which was a suit by a workman, not against his employer but against the insurance company who had insured his employer, and where a rider on the policy provided that the policy was ''intended to cover such legal liability of the assured as is imposed'' by the Workmen's Compensation Act, the court held that the Industrial Commission under section 28 [Callaghan's 1916 Stat. ¶ 5475(28)] might make an award against the insurance company as being primarily liable.

In the rider in the present policy there is no expression similar to or the equivalent of the words ''to cover such legal liability of the assured as is imposed'' by the Workmen's Compensation Act. The latter words, which were used in the *Illinois Indemnity Exchange* case, *supra,* expressly imposed upon the insurer

all the legal liability which the Workmen's Compensation Act imposed upon the insured. Here, however, the rider provides that: "The obligations of Section 1 (a) of the policy * * * include such Workmen's Compensation Laws as are herein cited," etc. Those words do not purport to change the obligations of Section 1 (a) of the policy, but merely suggest that the obligations of Section 1 (a), such as they are, shall be carried out in the manner provided by the Workmen's Compensation Laws.

Following the rider are certain "declarations" consisting of 13 items. They purport on the part of the plaintiff to set forth certain facts concerning the address, business, location, operations, etc., of the plaintiff, together with the estimated wages and estimated premium. Item 4 of the declarations make reference to a "foregoing enumeration and description of employees," but although there is some description of employees there is no enumeration, so that although item 4 uses the expression "the foregoing enumeration and description of employees includes all persons legally employed in the service of this employer in connection with the business operations above described to whom remuneration of any nature in consideration of service is paid," it cannot reasonably be claimed that any of the language in that item in any way suggests that it was the intention of the parties to the policy to include any "employees" save those who would be considered such at common law.

From the foregoing analysis of the actual phraseology of the policy of insurance, we are compelled to conclude that by its express terms it is limited to a liability for the personal injuries or death of those between whom and the plaintiff there existed the relation of master and servant; in other words, employees such as would be so considered by the common law.

It is true that a casual reading of the policy may

suggest that in determining the scope of the liability of the defendant under the policy all the principles of the Workmen's Compensation Act were meant to be used, yet, a careful consideration of all the words creating the obligations of the policy, and a fair judgment of all its parts as they bear upon each other and are interrelated, lead quite solidly to the conclusion that the liability of the plaintiff for the death of Frame, an employee of Colvin, was not covered by the policy; in other words, that whether or not Frame was an employee was to be determined as at common law and not by the principles of the Workmen's Compensation Law. Further, although it could not be said that it was a condition precedent to liability on the part of the defendant that Frame's name should be upon the pay roll of the plaintiff or that the premium had theretofore been paid upon his wages, still, we are of the opinion, as the premium was based upon the entire remuneration earned by all the employees of the plaintiff that were engaged in the manufacture of roofing paper and as Frame's name was not upon the pay roll of the plaintiff, that that fact was, at least, some evidence, to be taken along with the fact that he was neither hired nor controlled by the plaintiff, that it was not intended to include Frame as an employee covered by the policy.

It is further contended by the plaintiff that the particular work being done by Frame was being done for the plaintiff and that, even according to the connotation of the word "employee" as used conventionally and at common law, Frame should be considered as an employee of the plaintiff. We are of the opinion, however, that at the time of his death Frame was an employee of Colvin, hired by and responsible to him, and was not an employee of the plaintiff, and that the work which he was doing was work that Colvin had contracted to have done and for which he, Colvin, was responsible; and that, being

killed while so working for Colvin, damages for his death, though recoverable by his representatives from the plaintiff, are not in any way a liability of the defendant or covered by the policy.

It is further contended by the plaintiff that the trial court erred in overruling the plaintiff's motion to strike the defendant's amended affidavit of merits. Inasmuch as the plaintiff went to trial with the record as it then stood, no question now can arise as to the sufficiency or insufficiency of the affidavit of merits.

Finding no error in the record the judgment of the municipal court is affirmed.

*Affirmed.*

O'Connor, J., concurs.

Thomson, J., specially concurring:

While I concur in the decision of this case as above announced, I do not agree with the reasons set forth in the foregoing opinion.

In the contract of insurance which is involved in this case, The Amalgamated Roofing Company is referred to as "the employer" and by the terms of the contract, the insurance company enters into certain obligations with the employer "as respects personal injuries sustained by *his employees.*"

The obligations of the insurance company, so entered into, are, in part "to pay to the person and in the manner provided by the Workmen's Compensation Law, any sum due or to become due from this employer because of any *such injury* * * *" and also "to indemnify this employer against loss by reason of the liability imposed upon him by law for damages on account of *such injuries.*" The policy also provides that it "shall apply to such injuries sustained by any person or persons legally employed by this employer whose entire remuneration shall be included in the

230     Appellate Courts of Illinois.

Amalgamated Roofing Co. v. The Travelers Ins. Co., 221 Ill. App. 213.

total actual remuneration," upon which the premium is to be computed. It is also provided by the terms of the policy that all of the provisions of the Workmen's Compensation Act "shall be and remain a part of this contract, as fully and completely as though written herein, *so far as they apply to compensation for any personal injury or death covered by this policy."*

Under the terms of the policy above referred to, the insurance company would not be liable to pay the employer any sum which might become due from him because of some injury covered by the Workmen's Compensation Act, nor would it become liable to indemnify the employer against loss by reason of his liability under the Workmen's Compensation Act for damages on account of some injury, unless the injuries involved came within those covered by the policy, namely. "personal injuries sustained by *his employees."*

I am unable to agree with the proposition set forth in the majority opinion, that the question of whether a given individual shall be held to come within the phrase "his employees" should be determined according to the common law rather than the Workmen's Compensation Act. Rather, in my opinion, that question should be determined by an examination of the provisions of the act referred to.

But, in my opinion, the contention of the plaintiff, that Frame was its employee under the terms of section 31 of the Workmen's Compensation Act [Callaghan's 1916 Stat. ¶ 5475(31)], as in force at the time of Frame's injury, is untenable, although it might not have been if the question had arisen under the provisions of section 31 as it existed prior to the amendment of 1917. Before the amendment referred to, section 31 provided in express terms that, under certain conditions (being those under which Frame was working), one engaging a contractor to do certain work

"shall be included in the term 'employer' and with the immediate employer shall be jointly and severally liable to pay the compensation herein provided for," in case of injury to an employee of the contractor. But after the amendment referred to, the section in question provided that under the said circumstances, the one having such work done "shall be liable to pay compensation to *his own immediate employees* * * * and in addition thereto * * * *to the employees of any such contractor or sub-contractor,"* unless the latter is covered by liability insurance. [Callaghan's 1920 Stat. ¶ 5475(31).]

Frame, in my opinion, was an employee of Colvin, the roofing contractor employed by the plaintiff. And, while Frame's injury gave rise to a liability on the part of the plaintiff, under the provisions of section 31 of the Workmen's Compensation Act, it was a liability on the part of the plaintiff to one of the employees of the contractor Colvin and not a liability to one of the plaintiff's own employees. Frame did not become an employee of the plaintiff in legal contemplation under the provisions of section 31. He remained, in law as well as in fact, an employee of Colvin and as such became entitled to compensation from the plaintiff.

But the contract of insurance between the defendant insurance company and the plaintiff is expressly limited to the obligation of the plaintiff to pay compensation for "personal injuries sustained *by his employees*" and, therefore, the policy did not cover the obligation incurred by the plaintiff under the Workmen's Compensation Act by reason of the injury to Frame.

It may well be, as counsel for the plaintiff argue in their brief, that Frame was within the term "employee" as used in section 31 of the Workmen's Compensation Act. But, in my opinion, it would not follow that he came within the term "his employees" as used

in this policy of insurance. Especially where section 31 describes the employer's liability (under the circumstances under which Frame was working) as a liability to pay compensation "to his own immediate employees  *  *  *  and in addition thereto  *  *  * to the employees of any such contractor or sub-contractor," Frame coming within the latter class.

The plaintiff contends that the finding of the Industrial Commission, that Frame was an employee of the plaintiff, was conclusive and binding upon the defendant and that the latter, having refused to defend and prosecute an appeal from the finding of the Industrial Commission, is estopped to claim that Frame was not an employee of the plaintiff. In my opinion, that contention is also untenable. The finding of the Industrial Commission was to the effect that under the terms of the Workmen's Compensation Act the Amalgamated Roofing Company was obliged to pay compensation by reason of the injury suffered by Frame, but it was not essential to such a holding that the commission find that Frame was an employee of the Amalgamated Roofing Company. As stated above, the latter was obliged to pay compensation by reason of Frame's injury, though Frame was not its employee but was the employee of the contractor Colvin.

The plaintiff further contends that the insurance company, having breached its policy obligation, by reason of its refusal to defend, the plaintiff was entitled to settle the Frame claim by paying the amount specified in the finding of the Industrial Commission and recover such amount from the defendant. That contention might be sound if the obligation of the plaintiff, involved in the Frame claim, were such as to come within the contractual obligation of the defendant insurance company as set forth in its policy of insurance, which, in my opinion, is not the case, for the reasons set forth above.